IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ENDURANCE ASSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HARTFORD FIRE INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:24-cv-11237 |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND EQUITABLE CONTRIBUTION**

Plaintiff Endurance Assurance Corporation ("Endurance") for its Complaint for Declaratory Judgment and Equitable Contribution against Defendant Hartford Fire Insurance Company ("Hartford"), states and alleges as follows:

**NATURE OF ACTION**

1. This is an insurance coverage dispute arising from Hartford's failure to defend and indemnify its named insured, Kinseth Hotel Corporation ("Kinseth"), in connection with an underlying trip-and-fall lawsuit. Hartford's failure to provide coverage resulted in Endurance having to cover the entire settlement not only on behalf of its in named insureds, Glenview Investors, Inc. and Alliance Hospitality Management, LLC (collectively, "Glenview"), but also on behalf of Kinseth. Because Hartford and Endurance are co-primary insurers relative to the lawsuit,

2. A real, substantial, and justiciable controversy has arisen and now exists between Endurance and Hartford. This controversy is subject to resolution under 28 U.S.C. §§ 2201 and 2202. Endurance is entitled to declaratory judgment that Hartford failed to indemnify Kinseth.

Therefore, Hartford must reimburse Endurance for Hartford's share of the settlement of the underlying action.

## THE PARTIES

3. Plaintiff Endurance is a Delaware corporation with its principal place of business in New York, New York.

4. Defendant Hartford is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. section 1332 because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the underlying trip-and-fall accident giving rise to the Fry Lawsuit and this coverage dispute took place in this judicial district.

7. An actual controversy exists between Endurance and Hartford regarding Hartford's coverage obligations owed to its named insured, Kinseth, relative to the trip and fall lawsuit, which Endurance settled on Kinseth's behalf. This controversy is subject to resolution under 28 U.S.C. §§ 2201 and 2202.

## GENERAL ALLEGATIONS

**A.     The Management Agreement**

8. On July 29, 2020, Kinseth and Glenview entered into a Management Agreement (the "Agreement") for Kinseth's management of a hotel located at 1400 Milwaukee Ave. in Glenview, Illinois (the "Hotel"). A copy of the Agreement is attached hereto as **Exhibit A.**

9. Article 7.1 of the Agreement (Operator's Overall Duties and Responsibilities) provides:

> [Kinseth] shall be responsible for and have full power, authority, discretion and control in all matters relating to the operation, management, and maintenance of the Property, including without limitation […] (l) maintenance, repairs and cleaning of all improvements and equipment, and (m) generally all activities necessary for the operation, management, and maintenance of the Property.

10. Article 7.12 of the Agreement (Indemnity), provides that Kinseth agrees to indemnify Glenview as follows:

> [Kinseth] shall indemnify and defend [Glenview] […] against and hold [Glenview] […] harmless from any and all losses, costs, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, arising directly or indirectly out of (i) any default by [Kinseth] under the provisions of this Agreement or (ii) any negligence or willful misconduct of [Kinseth] […] in connection with this Agreement or [Kinseth's] services or work hereunder, whether within or beyond the scope of its duties or authority hereunder.

11. Article 10.1 of the Agreement (Insurance Coverage) provides as follows with respect to the procurement of insurance:

> In connection with [Kinseth's] preparation of the Annual Business Plan (provided for below), [Glenview] shall furnish [Kinseth], for budgeting purposes, with a schedule setting forth the kinds and amounts of insurance [Glenview] intends to procure in connection with the [Hotel]. This schedule shall specify the kinds and amounts of insurance required to be maintained pursuant to any mortgage, lease or other agreement, as well as such other kinds and amounts of insurance as [Kinseth] shall deem necessary or advisable for the protection of [Kinseth] and [Glenview]. Promptly following the receipt of such schedule, [Glenview] shall notify [Kinseth] of any requested changes that [Glenview] desires to make in such schedule. [Glenview] will purchase all insurance for the [Hotel].

12. Article 10.2 of the Agreement (Types and Amounts of Insurance) provides as follows with respect to the types and amounts of insurance to be procured:

> [Glenview], with the consent of [Kinseth] (which consent shall not be unreasonably withheld), shall provide and maintain the following insurance throughout the term of this Agreement (provided, however, that if any mortgage lender with respect to the [Hotel] or any franchisor or licensor with respect to any business operated at the [Hotel] requires greater or additional coverage, than such greater or additional coverage shall apply):

3

    (a)    Public liability insurance having a minimum per occurrence limit of $2,000,000, against all claims that may be brought anywhere in the world for personal injury (including bodily injury), death, or damage to property of third persons. […].

13. Upon information and belief, Kinseth assumed management of the Hotel no later than May 1, 2021 pursuant to the express terms and conditions of the Agreement.

**B.**     **The Fry Lawsuit and $500,000 Settlement**

14. On April 27, 2022, James Fry filed an underlying personal-injury and wrongful death lawsuit titled *James Fry v. The Village of Glenview, et al.*, Circuit Court of Cook County, Illinois, Case No. 2022-L-003836 (the "Fry Lawsuit"). The Fry Lawsuit alleged that plaintiff's decedent, Lois Fry, was walking in front of the Hotel on May 7, 2021 when she tripped and fell on an uneven portion of the sidewalk. Ms. Fry allegedly sustained significant injuries as a result of her fall, including facial lacerations and suspected brain bleeding, and on June 24, 2021, she succumbed to her injuries and passed away. A copy of the Fry Lawsuit is attached hereto as **Exhibit B**.

15. Endurance agreed to pay $500,000 to settle the Fry Lawsuit in exchange for full and complete releases of Glenview and Kinseth, both of which are insureds under the Endurance Policy(the "Settlement"). A copy of the Settlement is attached hereto as **Exhibit C**. The Cook County Circuit Court approved the Settlement on October 18, 2022, and Sompo paid the Settlement in its entirety under the Endurance Policy on November 2, 2022. A copy of the Circuit Court's approval of the Settlement is attached hereto as **Exhibit D**.

**C.**     **Hartford's Denial of Coverage**

16. On April 28, 2022, Kinseth tendered its defense and indemnity in connection with the Fry Lawsuit to Hartford under the primary policy it issued to Kinseth as its named insured.

4

17. On May 23, 2022, Hartford acknowledged that Kinseth is its insured but denied coverage on the grounds that it owed no duty to defend because no lawsuit had been filed and there was no evidence that Kinseth was liable for the claims asserted in the Fry Lawsuit. Hartford also took the position it would rely on Glenview and Endurance to defend Kinseth as an additional insured under the Endurance Policy. A copy of Hartford's letter denying coverage is attached hereto as **Exhibit E**.

18. On September 30, 2022, Endurance requested that Hartford reconsider its denial of coverage given Hartford's obligations to Kinseth, its named insured. A copy of Endurance's letter dated September 30, 2022 is attached hereto as **Exhibit F.**

19. Endurance followed up with Hartford via email on multiple occasions, including in October 2022, to which Hartford responded it was reviewing coverage with its attorney. Copies of the referenced emails are attached hereto as **Exhibit G**.

20. To date, Hartford has not agreed to reconsider its denial of coverage to Kinseth under the primary policy Hartford issued to it, and correspondingly, has refused to reimburse Endurance for Hartford's equitable share of the Settlement.

## THE INSURANCE POLICIES

**A.  The Endurance Policy**

21. Endurance issued a commercial general liability policy number MGH30000014900 to Glenview for the policy period November 1, 2020 to November 1, 2021 (the "Endurance Policy"). The Endurance Policy includes an "each occurrence" liability limit of $1,000,000 for "any one premises," and a "general aggregate" liability limit of $2,000,000. A copy of the Endurance Policy is attached hereto as **Exhibit H**.

22. The Endurance Policy provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle and\y claim or "suit" that may result.

23. The Endurance Policy further provides at Section IV – Commercial General Liability Conditions:

**4**. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

\*   \*   \*

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

24. By endorsement, the Endurance Policy defines "insured" to include Glenview's real estate managers where required by contract:

**REAL ESTATE MANAGER REDEFINED**
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION II – WHO IS AN INSURED**, Paragraph 2. B. is deleted and replaced by the following:

b.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager, but only if you are contractually obligated to include them as an insured pursuant to a written contract or agreement and only to the minimum extent required by such contract or agreement.

This endorsement does not change any other provision of the policy.

25.  The Endurance Policy also includes the follow "Additional Insured – Designated Person or Organization" endorsement, which provides as follows:

### ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| **Name Of Additional Insured Person(s) Or Organization(s):** |
|---|
| Any person or organization that you are obligated pursuant to a written contract or agreement executed prior to a loss to provide such insurance as is afforded by this policy. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A.  **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

   **1.** In the performance of your ongoing operations; or
   **2.** In connection with your premises owned by or rented to you.

   However:

   **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

  **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** **The Hartford Policy**

26. Hartford issued a special multi-flex business insurance policy number 37 UEN ID5082 K3 to Kinseth for the policy period May 17, 2020 to May 17, 2021 (the "Hartford Policy"). The Hartford Policy includes commercial general liability insurance with an "each occurrence" liability limit of $1,000,000, and a "general aggregate" liability limit of $2,000,000. A copy of the Hartford Policy is attached hereto as **Exhibit I**.

27. The Hartford Policy provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
>     \*   \*   \*
>
> b. This insurance applies to 'bodily injury' […] only if: […] (2) the 'bodily injury' […] occurs during the policy period. […]."

28. The Hartford Policy defines "bodily injury" to mean "physical: a. Injury; b. Sickness; or c. Disease sustained by a person and, if arising out of the above, mental anguish or death at any time."

29. The Hartford Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

30. The Hartford Policy defines "suit" to mean "a civil proceeding in which damages because of 'bodily injury' […] to which this insurance applies are alleged."

31. The Hartford Policy further provides at Section IV – Commercial General

Liability Conditions:

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

   b. **Excess Insurance**

      This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

      \* \* \*

      **(6) When You Are Added As An Additional Insured To Other Insurance**

         Any other insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations, for which you have been added as an additional insured by that insurance; […].

   c. **Method Of Sharing**

      If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**COUNT I – DECLARATORY JUDGMENT**
**(Hartford Owed a Duty to Defend Kinseth)**

32. Endurance incorporates and realleges all of the preceding paragraphs as though fully restated herein.

33. Kinseth is a named insured under the Hartford Policy and is entitled to coverage on a primary basis in connection with the claims alleged against it in the Fry Lawsuit.

9

34. The Hartford Policy obligates Hartford to defend Kinseth against claims for "bodily injury" taking place during the policy period and caused by an "occurrence," as alleged in the Fry Lawsuit.

35. The Hartford Policy, like the Endurance Policy, defines "bodily injury" to mean physical injury, sickness, or disease, and the term "occurrence" to mean an accident.

36. The Fry Lawsuit includes a wrongful death claim against Kinseth alleging it is liable for the May 7, 2021 slip-and-fall Incident at the Hotel. The Fry Lawsuit specifically alleges that Kinseth, in its capacity as the manager of the Hotel, knew or should have known about the uneven sidewalk and negligently failed to warn pedestrians like Lois Fry about the uneven sidewalk and otherwise negligently failed to inspect and maintain the sidewalk.

37. Kinseth timely tendered its defense in the Fry Lawsuit to Hartford under the Hartford Policy.

38. Based on the factual allegations in the Fry Lawsuit, Hartford owed a duty to defend Kinseth under the Hartford Policy on a primary basis.

39. No provision in the Hartford Policy applies to limit or preclude Hartford's duty to defend Kinseth in connection with the Fry Lawsuit.

40. Hartford owed a duty to defend Kinseth on a primary basis in connection with the Fry Lawsuit.

### COUNT II – DECLARATORY JUDGMENT
**(Hartford Breached its Duty to Defend Kinseth)**

41. Endurance incorporates and realleges all of the preceding paragraphs as though fully restated herein.

42. Hartford owed a duty to defend Kinseth in the Fry Lawsuit on a primary basis under the Hartford Policy.

10

43. Kinseth tendered its defense in the Fry Lawsuit to Hartford under the Hartford Policy. However, on May 23, 2022, Hartford breached its duty to defend by declining coverage to Kinseth under the Hartford Policy on the following bases: (1) Kinseth is not liable for the claims alleged in the Fry Lawsuit; and (2) any coverage under the Hartford Policy is excess to coverage available to Kinseth under the Endurance Policy.

44. Hartford breached its duty to defend Kinseth under the Hartford Policy.

## COUNT III – DECLARATORY JUDGMENT
### (Hartford Owed a Duty to Indemnify Kinseth)

45. Endurance incorporates and realleges all of the preceding paragraphs as though fully restated herein.

46. The Hartford Policy provides coverage for the settlement amount paid by Endurance to settle the Fry Lawsuit on behalf of Kinseth and no provision in the Hartford Policy potentially applies to limit or preclude Hartford's duty to indemnify Kinseth in connection with the claims alleged in the Fry Lawsuit.

47. The Hartford Policy thus provides indemnity coverage for the $500,000 paid on behalf of Kinseth as part of the Settlement of the Fry Lawsuit.

## COUNT IV – DECLARATORY JUDGMENT
### (Hartford Breached its Duty to Indemnify Kinseth)

48. Endurance incorporates and realleges all of the preceding paragraphs as though fully restated herein.

49. Hartford owed duties to defend and indemnify Kinseth on a primary basis under the Hartford Policy in connection with the claims alleged in the Fry Lawsuit.

50. Kinseth tendered its defense in the Fry Lawsuit to Hartford, but Hartford refused to defend Kinseth under the Hartford Policy.

11

51. At the time the parties in the Fry Lawsuit were negotiating the settlement, and again in September and October 2022 when the Settlement was pending court approval, Hartford also failed to indemnify Kinseth in connection with the claims alleged in the Fry Lawsuit and the Settlement.

52. Because Hartford failed to participate in settlement negotiations and contribute, Endurance was forced to pay the full amount of the Settlement.

53. Hartford breached its duty to indemnify Kinseth under the Hartford Policy.

## COUNT V – DECLARATORY JUDGMENT
### (The Other Insurance Provision Does Note Make The Hartford Policy Excess)

54. Endurance incorporates and realleges all of the preceding paragraphs as though fully restated herein.

55. Articles 10.1 and 10.2 of the Agreement require Glenview to procure liability insurance for the Hotel. Kinseth is thus an "insured" under Section II of the Endurance Policy pursuant to the "Real Estate Manager Redefined" endorsement, which provides that Glenview's real estate managers like Kinseth qualify as "insureds" where required by a written contract.

56. The Fry Lawsuit alleged claims directly against Kinseth arising from Kinseth's alleged failure to manage and maintain the Hotel.

57. Under Article 7.12 of the Agreement, Kinseth also agreed to indemnify Glenview for Kinseth's acts and omissions.

58. Kinseth is not an "additional insured" under the Endurance Policy for its alleged direct negligence.

59. Kinseth is a named insured under the Hartford Policy for its alleged direct negligence.

60. Hartford insures Kinseth on a primary basis with respect to Kinseth's alleged direct negligence.

61. Hartford thus has an obligation to share in the settlement of the Fry Lawsuit on a primary basis with respect to Kinseth's alleged negligence.

## COUNT VI – DECLARATORY JUDGMENT
**(Hartford is Estopped from Denying its Duty to Indemnify Kinseth)**

62. Endurance incorporates and realleges all of the preceding paragraphs as though fully restated herein.

63. Hartford owed Kinseth a primary duty to defend it against the claims alleged in the Fry Lawsuit.

64. Kinseth timely tendered its defense in the Fry Lawsuit to Hartford under the Hartford Policy.

65. Hartford refused to defend and indemnify Kinseth in connection with the claims alleged in the Fry Lawsuit.

66. Notwithstanding it denial, Hartford failed to file a declaratory judgment action to seek a court's ruling relative to its coverage obligations to Kinseth for the Fry Lawsuit.

67. Hartford therefore breached its duty to defend Kinseth and is estopped from asserting any potentially applicable coverage defenses that may otherwise have precluded Hartford's obligation to indemnify Kinseth in connection with the claims alleged against Kinseth in the Fry Lawsuit.

68. Hartford is estopped from denying coverage for Kinseth because it breached its duty to defend and indemnify Kinseth in the Fry Lawsuit.

## COUNT VII – EQUITABLE CONTRIBUTION
### (Endurance is Entitled to Equitable Contribution from Hartford)

69. Endurance incorporates and realleges all of the preceding paragraphs as though fully restated herein.

70. The Hartford Policy provides coverage to Kinseth on a primary basis for the claims alleged in the Fry Lawsuit.

71. On or about November 2, 2022, Endurance paid $500,000 to settle the Fry Lawsuit on behalf of Kinseth.

72. Hartford refused to contribute to the Settlement, and, consequently, Endurance was required to fund the entire Settlement, despite the fact that Hartford owed both defense and indemnity coverage on a primary basis to Kinseth under the express terms of the Hartford Policy.

73. In making payments for the Settlement of the Fry Lawsuit, Endurance was not a volunteer and was acting pursuant to its obligations under the provisions of the Endurance Policy. However, Hartford has the primary duty to defend and indemnify its named insured, Kinseth, in connection with the claims alleged in the Fry Lawsuit.

74. The Fry Lawsuit and resulting Settlement is a loss for which both Endurance and Hartford have duties to defend and indemnify Kinseth.

75. Pursuant to the Hartford Policy, which was in effect concurrently with the Endurance Policy, Hartford's duty to indemnify Kinseth is primary to Endurance's duty to indemnify Kinseth.

76. Hartford must equitably contribute to the Settlement of the Fry Lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Endurance, prays for relief as follows:

1. For a declaration that Hartford owed a duty to defend Kinseth under the Hartford Policy in connection with the Fry Lawsuit;

2. For a declaration that Hartford breached its duty to defend Kinseth under the Hartford Policy in connection with the Fry Lawsuit;

3. For a declaration that Hartford owed a duty to indemnify Kinseth under the Hartford Policy in connection with the Fry Lawsuit;

4. For a declaration that Hartford breached its duty to indemnify Kinseth under the Hartford Policy in connection with the Fry Lawsuit;

5. For a declaration that Section IV.4.(6) in the Hartford Policy does render coverage under that policy excess to the coverage available to Kinseth under the Endurance Policy as Glenview's real estate manager;

6. For a declaration that coverage under both the Endurance Policy and Hartford Policy afford coverage to Kinseth in connection with the claims alleged against Kinseth in the Fry Lawsuit on a primary basis, and as such, that the "other insurance" provisions in the Endurance Policy and Hartford Policy (Sections IV.4.c. in each policy) require contribution by equal shares with respect to the defense of the Fry Lawsuit and the $500,000 settlement that Endurance paid on behalf of Kinseth.

7. For a declaration that Hartford is estopped from denying coverage under the Hartford Policy because it breached its duties to defend and indemnify Kinseth in connection with the Fry Lawsuit; and

8. For a judgment that Hartford is obligated to reimburse Endurance for Hartford's equitable share of defense costs and indemnity that Endurance paid under the Endurance Policy to settle the Fry Lawsuit on behalf of their mutual insured, Kinseth.

9. For all other relief the Court deems just and proper.

Dated: October 31, 2024            Respectfully submitted,

ENDURANCE ASSURANCE CORPORATION


By:*/s/Leena Soni*
   Leena Soni
   Nicolaides Fink Thorpe Michaelides Sullivan LLP
   10 South Wacker Drive, 36th Floor
   Chicago, IL 60606
   Telephone: (312) 585-1400
   lsoni@nicolaidesllp.com